## DAVID HEATON *v.* MANHATTAN FIRE INSURANCE COMPANY.

An insurance company may waive a condition in its usual form of policy, that in order that the policy should be binding the premium must be actually paid, as well as any other condition in the contract intended for its benefit; and if the insured is allowed to act upon the confidence of such waiver, the company is estopped to deny the fulfillment of the condition.

If the instruction given by the court to the jury is correct in matter of law, it is not to be presumed, as a ground for a new trial, that it misled the jury.

Where the insurance of the interest of a mortgagee in possession of certain woolen machinery is renewed, as of the 1st day of December, 1861, it will not affect the policy by way of misrepresentation of his interest in the subject of insurance, if on the 2d day of December, 1861, he take a release of the equity of redemption from the assignors of the mortgagor, although the renewal be procured after the release; nor will such release affect his insurance by way of merging his mortgage, where his mortgage is, at the time, pledged to a bank as security for his endorsements, and his interest and design is, that it should be kept separate from the equity. The clause in a policy, that if the property insured " shall be sold or conveyed, this policy shall be null and void," refers to a sale or conveyance of it by the insured, determining his interest in the subject of insurance, and not to a sale or conveyance *to* him, to the increase of his interest in it.

Newly discovered cumulative evidence will not avail as a ground for a new trial, unless it be controlling upon the point to which it relates.

ASSUMPSIT upon a policy of fire insurance, alleged to have been effected by the plaintiff with the defendants, insuring his interest as mortgagee in certain woolen machinery in his mill in North Providence, against loss or damage by fire, from the 1st day of December, 1861, to the 1st day of December, 1862, to the amount of $2000. The declaration contained four counts: the *first*, in substance, that the defendants insured the plaintiff's interest in the machinery, to the extent of $2000, from the 2d day of June, 1861, to the 2d day of December, 1861, at noon, and that on said 2d day of December, 1861, said policy was renewed for one year from 1st day of December, 1861, on the same terms with the original policy,—a total loss by fire, December 11th, 1861, &c.; the second count, the same as the first, with the addition, that the defendants had not delivered the certificate of renewal to the plaintiff, as they had agreed to do; third count, that the defendants had agreed to renew the original policy aforesaid, from the 1st day of December, 1861, to the 1st day of December, 1862, but had refused to do so; and the fourth count, that the defendants had agreed to renew and continue in force the original policy until the defendants gave notice of some other arrangement, which notice was not given until after the loss, &c.

At the trial of the cause, under the general issue, before the Chief Justice, with a jury, at the September term of this court for the county of Providence, 1862, the question of fact submitted and argued to the jury was, whether the agent of the defendants, Immanuel Searle, when, on the 2d day of December, 1861, he agreed to renew upon the same terms, the original policy, for one year from the 1st of December, 1861, agreed to wait only until the next day, for the plaintiff to come in and adjust the payment of the premium, as Searle swore, or until such time as would be convenient to the plaintiff, as sworn to by him; the particulars of the proof touching which being stated by the Judge delivering the opinion, in considering the ground for this motion, in the discovery of new and further evidence, need not be stated here.

The policy provided, amongst other things, in its body, that "if the said property shall be sold or conveyed," "this policy shall be null and void;" and the fifth article of the conditions of insurance, annexed to the policy—and by reference made part of

it—was, " No insurance, whether original or continued, shall be considered as binding until the actual payment of the premium."

It appeared, in proof, that Harvey F. Payton was the owner of one-half of the woolen machinery in the mill, which was totally destroyed by fire on the 11th day of December, 1861, and the plaintiff and ———— Cowing were the owners of the other half of the same, and that it was the plaintiff's interest as mortgagee of Payton's half of the woolen machinery, which was insured by this policy ; that at the time of the plaintiff's application for a renewal of his policy, and the time of the loss, the mortgage from Payton was deposited in the Atlas Bank, of Providence, as security for the plaintiff's endorsements of Payton's notes, and was designed by the plaintiff to be kept separate from all other interest of his in the machinery ; and that, on the 2d of December, 1861, the assignees in trust of Payton released to the plaintiff Payton's equity of redemption under the mortgage.

The defendants requested the Judge trying the cause to charge the jury, that if they found that the premium for the renewal of the policy had not been actually paid by the plaintiff, he could not recover in this action ; and that if the plaintiff had changed his interest from mortgagee to owner of the property insured, he was not insured under said policy, if renewed. The Judge refused to give these instructions to the jury, but did instruct them, that if they were satisfied from the evidence, that there was an agreement between the defendants and the plaintiff, on the 2d day of December, 1861, or at any time previous to the loss, that the plaintiff was insured, he to come in at any time and take his certificate of renewal, the agent to trust him for the payment of the premium, and that the plaintiff acted upon that agreement, that then the defendants were estopped from denying that the policy was executed ; and that the plaintiff's representing himself as interested as mortgagee in the property, when interested as shown by the evidence, did not amount to such a difference in description of his interest as to avoid the policy.

The jury having returned a verdict for the plaintiff for a total loss, the defendants moved for a new trial, on the ground of error in law in these instructions ; and by a subsequent amendment to their motion, on the ground of the discovery of new and further

evidence, shown by the affidavits accompanying the amended motion, to be the testimony of Philip B. Stiness, Jr., that he was present when the controverted agreement for renewal between the plaintiff and Searle, the agent for the defendants, was made, and would, at a new trial, confirm Searle, that he agreed to wait for the adjustment of the premium only until the next day.

*Payne & Colwell, for the defendants :*—

I. A condition of this policy is, that it shall not be binding until *actual* payment of the premium.

II. No evidence was submitted that Searle, the agent, had power to waive this condition, he swearing that he had not, though he swore that he received notes and checks for premiums, taking them to his own account; and the charge of the Judge, in not putting the question of Searle's authority to the jury, was calculated to mislead them.

III. The change of the interest of the insured, from that of mortgagee of the machinery insured to that of absolute owner of it, by the assignment of the mortgagor's equity of redemption, avoided the policy.

IV. The evidence of P. B. Stiness, Jr., though cumulative, would, in the state of the proof upon the point to which his testimony relates, be controlling.

*Eames, with whom was Bradley, for the plaintiff :*—

I. The provision in the policy of insurance, that the premium must be actually paid before the policy can take effect, may be waived by parol; and when thus waived, and the insured has acted and relied upon the faith of such waiver, the company is estopped from setting up the provision of their policy in defence to a suit upon it. *Clark* v. *The New England M. F. Ins. Co.* 6 Cush. 342; *Bumstead* v. *Dividend Ins. Co.* 2 Kernan, 81; *Trustees of First Baptist Church* v. *Brooklyn F. Ins. Co.* 18 Barb. 69; *Same* v. *Same*, 19 N. Y., 5 Smith, 305; *New York Central Ins. Co.* v. *National Protection Ins. Co.* 20 Barb. 474; *Goit* v. *National Protection Ins. Co.* 25 Ib. 189; *Hallock* v. *Insurance Co.* 2 Dutcher, 268; *Sheldon* v. *Connecticut Mut. Life Ins. Co.* 25 Conn. 218; *Taylor* v. *Merchants F. Ins. Co.* 9 How. 402; *Wing* v. *Harvey*, 5 DeGex, Macn. & Gord. 265; *Wing* v. *Harvey*, 27 Eng. L. & Eq. 140; *Hicks et al.* v. *Cram.*

17 Verm. 449; *Roe* v. *Jerome*, 18 Conn. 138; *Dazell* v. *Odell*, 3 Hill, 219; *Pickard* v. *Sears*, 6 Adol. & Ellis, 469, (33 Eng. C. L. 115); 2 Smith's Lead. Cases, side 458, top 537, top 561, notes, Am. ed. 1852; Angell on Fire and Life Insurance, p. 89, § 49; 1 Phillips on Insurance, 23; 2 Parsons on Mar. Law, 281; 1 Greenleaf on Evidence, side paging.

II. A parol agreement to insure is a binding contract, and the delivery of the policy is not essential to the completion of the contract. *Bragdon* v. *Appleton F. Ins. Co.* 42 Maine, 259; *Sheldon* v. *Connecticut M. Life Ins. Co.* 25 Conn. 218; *Hamilton* v. *Lycoming Ins. Co.* 5 Barr. 342; *McCulloch* v. *Eagle Ins. Co.* 1 Pick. 279; *First Baptist Church* v. *Brooklyn F. Ins. Co.* 18 Barb. 79; *Commercial M. M. Ins. Co.* v. *Union M. Ins. Co.* 19 How. 318; 1 Duer on Insurance, p. 66, §§ 10 and 11; Angell on Fire and Life Insurance, p. 70, § 37.

III. When a mortgagee obtains insurance on his interest as mortgagee in certain personal property, and subsequently pledges his mortgage as collateral security for the payment of his obligations, and intending to keep the mortgage distinct and separate from the fee, takes an assignment of the equity of redemption, there is no merger of the mortgage; and a renewal of the policy in such case is not void under the provisions of the policy, though issued by construction upon the original application, which described his interest as that of mortgagee. *Gibson* v. *Crehore*, 3 Pick. 475; *Hunt* v. *Hunt*, 14 Ib. 384; *Loud* v. *Lane et al.* 8 Metc. 517; *Evans* v. *Kimball*, 1 Allen, 240; *Nichols et al.* v. *Fayette M. F. Ins. Co.* Ib. 63; *Pratt et al.* v. *Bank of Bennington*, 10 Verm. 293; *Lockwood* v. *Sturtevant*, 6 Conn. 374; *Freeman* v. *Paul*, 3 Greenleaf, 260; *Forbes* v. *Moffatt*, 18 Ves. 384; 1 Hilliard on Mortgages, 330; Greenleaf's Cruise, book 1, p. 272, n. and cases cited.

IV. The evidence of P. B. Stiness, Jr., alleged to have been discovered since the trial of the cause, is merely cumulative, and consequently no ground for a new trial.

AMES, C. J.    It is not a disputable proposition, that an insurance company may waive a condition in its usual form of policy, that in order that the policy should be binding, the premium must be actually paid, as well as any other condition in the con-

tract intended for its benefit; and that if the insured is allowed to act upon the confidence of such waiver, the company is estopped to deny the fulfillment of the condition. The principle of the proposition, to prevent fraud, is found in the highest legal morality, and the cases set down on this point, upon the plaintiff's brief, place it beyond doubt, as a matter of authority.

We, do not understand that the contrary was seriously pretended in the argument of this motion; but that, in the general form in which the proposition was stated in the charge, it might have misled the jury, as concluding all inquiry on their part into the authority of the agent in this particular case to make the waiver. In the statement of what took place at the trial, as drawn up by the defendants and allowed by the presiding Judge, no question as to the agent's authority appears to have been raised before the jury, nor, in the request to the Judge for instructions, to have been called to the attention of the court. The instruction being in itself correct, we are not to presume that it misled the jury; especially when, if not clearly or aptly expressed, it would have been so easy for the counsel of the defendants to have called the attention of the presiding Judge to the question of the agent's authority, before the jury withdrew, if he desired either him or them to consider that question. *Lathrop* v. *Sharon*, 12 Pick. 172; *Raymond* v. *Nye*, 5 Metc. 151.

The other alleged error in the instructions given to the jury, in relation to the effect upon the plaintiff's insurance upon his interest as mortgagee, of the release to him of the equity of redemption on the 2d day of December, 1861, was not pressed as such at the argument of this motion. As a misrepresentation of the plaintiff's interest in the subject of insurance as a mortgagee in possession, there was no error, since the insurance was asked and granted as of the 1st of December, 1861, before the release of the equity; and as to a change of interest, there was none, because the mortgage being at the time pledged to the Atlas Bank as security for the plaintiff's endorsements, it was obviously his interest, as well as design, that it should be kept separate from the equity released to him, and not merged in it. The clause in the body of the policy, that " if said property," meaning the property insured, " shall be sold or conveyed, this policy shall

be null and void," obviously refers to a sale or conveyance of it *by* the assured, determining his interest in the subject of insurance, and not to a sale or conveyance *to* him, to the increase of his interest in it.

The ground of new trial laid in the newly discovered testimony of Stiness, that he was present at the interview between the plaintiff and Searle, the agent of the defendants, when this policy was renewed, and that the latter gave to the former only until the next day to come in and adjust the premium, is cumulative merely to the testimony of Searle, in the matter to which it relates. Such evidence cannot avail as a ground for new trial, " unless it is *in a manner* conclusive,"—that is, controlling, as we understand the phrase,—" on the point on which it is offered." *Potter* v. *Padelford & Co.* 3 R. I. Rep. 162, 166. This, again, depends upon the state of the proof upon the point, at the trial; and unless the court, looking at this, see, that upon the newly discovered evidence the jury ought to find the issue upon the disputed point for the defendants, such evidence, for the sake of both parties, ought not to open the case to a new trial.

At the trial it appeared in evidence, that several policies upon his mill and machinery had been taken out by the plaintiff for himself or for himself and his partner, coming from offices of which Searle was agent; some of which had expired, and were about to expire, and one of which the plaintiff had received notice the office would cancel, and that upon this last policy there would be a return premium due to the plaintiff to the amount of little more than half the amount of the premium he would have to pay to renew for a year the policy with the defendants; that either on the 3d or 4th of December, 1861, two or three days after the expiration of his old policy with the defendants, the plaintiff called at the office of Searle, their agent, and agreed for the renewal of this policy for a year from December 1st, 1861, and offered to pay the premium; that this offer was declined by Searle, for a greater length of time than, or until, the next day, when the plaintiff was to bring in the policy to be cancelled, and adjust with Searle the return premium on that, and the premium to be paid on the renewal of this, and in the meantime this was to be renewed for a year; that just as the plaintiff left the office,

or immediately after, Searle ordered his clerk, Darrin, to fill up the certificate renewing this policy for a year, countersigned it, and ordered it to be recorded in the book kept by him for registering the defendants' policies and renewals, and which being done, the renewal certificate was placed in a pigeon-hole used for that purpose, to be delivered by Searle, if present, or by his clerk, if he were absent, to the plaintiff when he might call for it; that the certificate and record thus remained until the morning after the fire, which took place on the evening of December 11th, 1861, when Searle destroyed the certificate, and wrote across the name of the insured on the record of it in the book of the defendants' policies, " Not taken." So far, the evidence, in substance, agrees. The only point in which it differs is, that the plaintiff swears, that he was to come in and adjust the return premium, and the premium to be paid for this renewal, when it might be convenient for him ; whereas, Searle swears, that he limited him until the next morning, and that only until that time was he to be insured on credit, and that he called upon his clerk, Darrin, to notice this limitation. Darrin, who was a witness for the plaintiff, swears positively, on his cross examination, that Searle " did not tell him to recollect that Mr. Heaton was insured until next day; that he recollected nothing about bringing in the policy (to be cancelled) next day; but to bring in the North American policy to be cancelled, but not next day, or any time being fixed ;" confirming, in this respect, the testimony of the plaintiff. It is true that he states, that he did not pay particular attention to the conversation between Searle and the plaintiff, and that he was " sometimes quite deaf," though he " could not say that I [he] was, at the time of this interview." Neither his inattention nor his deafness, if we are to believe him, prevented him from hearing this part of their conversation, and Searle swears, that he called his attention particularly to it. On the evening of the fire, and before Searle was apprised of it, an interview took place between the plaintiff and Searle, at the house of the latter, at which the plaintiff was accompanied by George M. Daniels, his nephew, who was also a witness in the cause on the part of the plaintiff, when, according to the testimony of both Daniels and the plaintiff, the plaintiff told Searle,

"that he had come to see about those policies, and asked him, how he had fixed them? Searle said, that he had fixed them as he agreed to. Heaton asked him, how that was? Searle said, that he had taken up the Greenwich policy, and cancelled the North American policy, and renewed the Home and Manhattan. Heaton said, he had not paid the premiums on the Home and Manhattan policies. Searle said, that wouldn't make any difference; he was insured in those two offices. Heaton asked him several times, if he considered him insured in those two offices? and Searle said, 'Yes,' each time. Heaton took out a check and asked him if he would take payment for those premiums, that evening? Searle declined the check, and said, 'that he did not do business at his house.'" These witnesses further swore, that at the same interview, after Heaton had told Searle that his mill was on fire, and a short conversation had ensued about the manner in which he had been informed of it, Heaton again put the question to Searle, "if he was insured in those two offices—the Home and Manhattan?" to which Searle replied, "that he was renewed on the books in those offices, but he should let the companies settle it;" and to the questions of the witness Daniels, to the same effect, put several times, made the same answer in substance. Searle, on the other hand, on the part of the defendants, admitting the interview, the offer of the check and his declining it, swears, that to the question of Heaton,—"I'm insured, ain't I?"—he replied, "I do not know whether you are insured or not;" and that to the question of Heaton,—"Did n't you tell me that I was insured down to the office?"—he made answer, "Yes, until next day, or one day, when you were coming in, and I did not know but that you had gone somewhere else, and got insured;" and that to the same question repeatedly put to him by the plaintiff, he repeatedly made, in substance, the same answer. The wife and son of Searle, who were also witnesses, and the one present, as she swore, nearly all the time of the interview, and the other, as he swore, only at the latter part of it, support him in his testimony, that this was the character of his reply.

In such a state of the proof, relating to the matter to which the newly discovered cumulative evidence applies, and especially,

with the admitted fact, that the renewal certificate was completely made out for a year, and left for delivery; and that this, with the record of it, remained until after the fire, when the one was destroyed, and the other marked, "Not taken," we could not say that the newly discovered evidence would be controlling on a new trial of the case, upon the point upon which it would be offered. It might, indeed, lead to doubt, and would certainly protract this litigation; but this, for the sake of both parties, as well as of the public, is a consequence which we ought to prevent.

For these reasons, we overrule this motion for a new trial upon the several grounds upon which it is made, with costs, and order judgment to be entered upon the verdict.