KIMBERLEY AND CARPENTER, INC., a corporation of the State of Delaware, *v.* NATIONAL LIBERTY INSURANCE COMPANY OF AMERICA, a corporation of the State of New York.

KIMBERLEY AND CARPENTER, INC., a corporation of the State of Delaware, *v.* FIREMEN'S FUND INSURANCE COMPANY, a corporation of the State of California.

64

(*December* 17, 1931.)

PENNEWILL, C. J., RICHARDS and RODNEY, J. J., sitting.

*Clarence A. Southerland* (of Ward and Gray) for plaintiff.

*Caleb S. Layton* (of Richards, Layton and Finger) and *W. Calvin Chestnut* (of the Maryland Bar) for defendants.

Superior Court for New Castle County, Summons Cases, Nos. 119 and 120, November Term, 1929.

RODNEY, J., delivering the opinion of the Court:

Under the foregoing pleas of the defendants, three important questions arise. Under the second plea the defendants contend that by reason of the foreclosure proceedings and the purchase of the property by the mortgagee that a "change of ownership" of the property took place and that it was the duty of the mortgagee, the plaintiff herein, to notify the insurance companies of this "change of ownership" and that the failure to give this notice viti-

ated the insurance not only as to the prior owner Winslow, but also as to the plaintiff, the mortgagee and purchaser at the foreclosure sale. Correlated to this defense, and arising under the same plea, is a further defense that since the plaintiff was insured only with respect to its interest as second mortgagee and because the mortgage had been foreclosed before the fire, that, therefore, at the time of the fire, the plaintiff had no interest which was covered by the policy.

The fourth plea sets out the rights of subrogation of the defendants under the rider attached to the policy and contends that these rights of subrogation were destroyed by the foreclosure sale and that consequently no liability exists against the defendants.

We shall address ourselves to the foregoing questions in the order in which they are here presented.

We draw no distinction between the fact that Kimberley and Carpenter were second mortgagees, but shall treat the matter as if the plaintiff had been generally referred to as mortgagee.

The first question to be considered is, Is the purchase by a mortgagee of the outstanding equity in the property insured, at his own foreclosure sale, such a change of ownership as is within the contemplation of the language of the policy and of the standard mortgagee clause, of which the mortgagee is required to give notice?

We do not propose to go into an extended discussion concerning the origin, the purpose or the development of the standard mortgagee clause. It seems certain, however, that it originated by reason of the inadequate security vested in the mortgagee under the old "loss payable" clause. Under the latter clause the mortgagee was a mere appointee of the mortgagor and person insured and any default or breach on the part of the mortgagor operated against the mortgagee and destroyed his rights under the policy. By the "standard mortgagee" clause, however, new rights were

set up in the mortgagee. Under it no default or breach on the part of the insured-mortgagor affects the right of the mortgagee, no change of ownership, of and in itself, cancels the policy as to him and in case of loss, he recovers in his own name by reason of his own status as an assured of the company. The clause, in itself, expressly states that no foreclosure or change of ownership, shall invalidate the policy insofar as the mortgagee is concerned, but provides merely that the mortgagee shall give notice of such change of ownership as shall come to his knowledge. The effect of the joint consideration of the policy and the mortgagee clause is that two severable contracts are set up—one in favor of the insured-mortgagor and the other in favor of the insured-mortgagee. The latter is distinct from the former and the rights of the mortgagee are subject to be defeated only by a violation of the terms set out in the mortgagee clause. What is the "change of ownership" notice of which must be given by the mortgagee if he has such knowledge? One underlying principle upon which is based the provision that a "change of ownership" invalidates a policy of insurance is, of course, the principle that in such change there may be an increased risk without the insurer's consent. The company cannot have forced upon it a party to its contract of whom it has not approved and in whose hands there may not be the same reason or incentive to preserve the property. This principle, however, has little application in the present case. Here the defendant insurance companies had issued their policies covering, severally, both the interests of the owner and of the mortgagee. When the owner paid his premium to the insuring companies, those companies, for that consideration, approved the persons severally covered by the policy. There were two beneficiaries of the policy—owner and mortgagee —with distinct and dissimilar rights, but both had been accepted and approved by the companies. When the company approved the present plaintiff-mortgagee, or lien

holder, it must have had in contemplation the natural and legal incidents growing out of the relation of lien debtor and creditor—of mortgagor and mortgagee—namely, that for the protection of the lien legal proceedings might become necessary and that the mortgagee might become the purchaser of the property.

When the mortgagee clause expressly stated that the interest of the mortgagee would not be invalidated by any foreclosure, it must have contemplated a foreclosure terminating by a purchase of the property by the mortgagee for a foreclosure terminating in the purchase of the property by any other person would have divested the insurable interest of the mortgagee.

At the foreclosure sale and purchase of the premises by the mortgagee, no new person became a party to the insurance contract, there has been no change of risk except by the withdrawal of the interest of the mortgagor and the increase of the amount of interest of the mortgagee. As between the plaintiff and the defendants, the parties to the contract were the same after the sale as before it. The Sheriff's deed has not vested the legal title to the premises in any one other than an insured under the policy.

We are of the opinion that where a mortgagee who is protected by a policy of insurance containing the standard mortgagee clause forecloses his mortgage and becomes the purchaser of the property that such transfer does not constitute such a "change of ownership" as will invalidate the policy though no notice of such foreclosure has been given to the company. In support of this conclusion we find a marked unanimity of authorities—both text writers and reported cases. We do not propose to extend this opinion by extended citations of these authorities, but content ourselves with references to those authorities in which our conclusion finds support. Of course, there are many authorities construing the old "loss payable" clause at variance with the conclusion herein reached. The dis-

tinction between these cases is clear, for under the "loss payable" clause, there was no separate contract with the mortgagee while under the "standard mortgagee" clause such separate contract exists and the mortgagee maintains his rights regardless of the status of the insured mortgagor. Many of the cases are collected in *Royal Ins. Co. v. Drury,* 150 *Md.* 211, 132 *A.* 635, and in the comprehensive note to that case in 45 *A. L. R.* 597. *Richards on Insurance (3d Ed.),* § 291, *p.* 396; *Joyce on Insurance, vol.* 4, § 2248, *p.* 3857; *Cooley Briefs on Ins., vol.* 3, *pp.* 2383, 2390, 2651; *Couch on Ins., Vol.* 5, § 1215; 26 *C. J. (Fire Ins.),* §§ 295, 300; *Pioneer Savings & Loan Co. v. St. Paul, F. & M. Ins. Co.,* 68 *Minn.* 170, 70 *N. W.* 979; *Oregon Mortgage Co. v. Hartford Fire Ins. Co.,* 122 *Wash.* 183, 210 *P.* 385; *Dodge v. Hamburg-Bremen F. Ins. Co.,* 4 *Kan. App.* 415, 46 *P.* 25; *Continental Ins. Co. v. Rotholz* (1931), 222 *Ala.* 574, 133 *So.* 587; *Patten v. Springfield F. & M. Ins. Co. (Mo. App.),* 11 *S. W.* (2d) 1101.

While the cases just mentioned involve the exact point here in issue, namely, the "change of ownership" as affected by a foreclosure of the mortgage and purchased by the mortgagee, there are many additional cases involving the analogous principle of the purchase by the mortgagee of the outstanding legal title. These also hold that the term "change of ownership" contemplates the transfer to a third person—a stranger, to the insurance contract. *Ft. Scott B. & L. Ass'n. v. Palatine Ins. Co.,* 74 *Kan.* 272, 86 *P.* 142; *Continental Ins. Co. v. Ward,* 50 *Kan.* 346, 31 *P.* 1079; *Bailey v. American Central Ins. Co. (C. C.),* 13 *F.* 250; *Esch v. Home Ins. Co.,* 78 *Iowa* 334, 43 *N. W.* 229, 16 *Am. St. Rep.* 443; *Heaton v. Manhattan Fire Ins. Co.,* 7 *R. I.* 502; *Couch on Ins., vol.* 5, § 1011; *Southern States F. & C. Ins. Co. v. Napier,* 22 *Ga. App.* 361, 96 *S. E.* 15. See, also, *Lancashire Ins. Co. v. Boardman,* 58 *Kan.* 339, 49 *P.* 92, 62 *Am. St. Rep.* 621; *Rostetter v. Amer. Ins. Co.,* 184 *Ill. App.* 157.

We have found but one case involving the standard mortgage clause where the conclusion is at variance with our own. *Belatti v. Western Grain Dealers' Mut. Fire Ins. Co. of Des Moines* (*S. D.*), 236 *N. W.* 367. There the Court cited for its authority cases determined under the "loss payable" policies and drew no distinction as to them.

■ Second. The defendants also resist recovery on the policies of insurance because they claim their only liability to the plaintiff was as "mortgagee" and that upon the foreclosure sale and purchase of the property by the plaintiff that the insurance as mortgagee was extinguished and that no rights exist under the policy in the plaintiff as owner.

The policy was issued to protect Winslow, the owner, and the mortgagee clause was attached to protect the interest of Kimberley and Carpenter, the mortgagee.

The defendants contend that because the interest of Kimberley and Carpenter ceased to be able to be properly classified as "mortgagee" that then the policy as to it was invalidated. This contention, we think, overlooks the basic principle underlying the protection afforded by the mortgagee clause. The underlying principle is, we think, that the owner would be protected for his interest and that the mortgagee would have his investment protected against loss by fire. It is the investment, the claim, or the lien which gives the mortgagee the insurable interest. The term "mortgagee" may be largely a matter of description and employed in order that the contract itself should show that the interest of Kimberley and Carpenter was an insurable interest. In *Boatner v. Home Ins. Co.* (*Tex. Com. App.*), 239 *S. W.* 928, the mortgagee clause was used to protect a debt secured, not by mortgage, but by a mechanic's lien.

The defendants knew that Kimberley and Carpenter had an insurable interest represented by its mortgage; the defendants approved of Kimberley and Carpenter as an insurance risk and sought and agreed by the policy and

rider to protect the financial investment of Kimberley and Carpenter against loss by fire.

The insurable interest of Kimberley and Carpenter (with the investment secured against loss by fire) remained during all the preliminary steps of the foreclosure. Upon the rendition of the judgment of the mortgage, the interest remained the same. When upon the sale the property was purchased by the plaintiff to protect its mortgage and upon the subsequent confirmation of sale and Sheriff's deed no new parties came into the transaction, but the interest of the owner was, by legal transmutation, vested in the mortgagee.

The mortgagee rider indemnified the plaintiff "as interest may appear." In the construction of this clause it has been held that with it present the exact nature of the interest need not also be set out, and, providing it be an insurable interest, which exists at the time of loss the beneficiary may recover. *Dakin v. Liverpool, London & Globe Ins. Co.*, 77 *N. Y.* 600; *De Wolf v. Capital City Ins. Co.*, 16 *Hun* (*N. Y.*) 116; *Bakhaus v. Caledonian Ins. Co.*, 112 *Md.* 676, 77 *A.* 310, 316.

Mr. Justice Van Devanter in *Atlas Reduction Co. v. New Zealand Ins. Co.* (*C. C. A.*), 138 *F.* 497, 504, 9 *L. R. A.* (*N. S.*) 433, 437, says of the words "as their interest may appear":

"They are plainly prospective, and refer, not to an interest at the time when the indorsement was written, but to such interest as may appear at the time of the loss, if any, without regard to the character of the interest, or the time when it may have arisen. The interest referred to is not an interest in the property insured, but is an interest in the payment of the loss, whether predicated upon an interest in the property or otherwise."

See, also, *Fenton v. Cascade Mut. Fire Ass'n*, 60 *Wash.* 389, 111 *P.* 343.

Upon the facts of this case we are of the opinion that the interest of Kimberley and Carpenter (which was known to be an insurable interest and approved before the sale)

under the foreclosure was essentially the same interest and covered by the policy at the time of loss. The amount of the interest of the original mortgagee may have increased as the amount of the interest of the mortgagor decreased by the divesting of his title, but the legal quality of the interest as an insurable one did not change and no new parties came into the transaction.

Lastly, the defendants claim that under the policy and the "standard mortgagee" rider attached thereto, it is entitled upon the payment of the plaintiff's claim to be subrogated to the rights of the plaintiff and upon payment of the full mortgage debt to be entitled to the assignment of the mortgage.

It claims that the foreclosure sale and purchase of the property by the plaintiff extinguished the mortgage and destroyed the rights of subrogation and, therefore, that the plaintiff has no claim.

Let us consider the defense under the fourth plea as distinguished entirely from the defense under the second plea. Under the second plea it was not a "change of ownership" that invalidated the policy, but a failure to notify the company of an alleged change of ownership. It is not the change, but the failure to notify of the change that would invalidate the policy as to the mortgagee.

The defense under the fourth plea then would be as valid whether or not notice had been given to the company of the circumstances of the foreclosure and of the alleged change of ownership. The rights of subrogation would have been destroyed in either case so that the defense of subrogation must stand by itself.

The right of subrogation is an equitable right growing out of a relationship between two or more parties whereby the party in whose favor the right is to be exercised having paid a debt succeeds by substitution to the rights of the creditor whom he has paid.

Originally subrogation as an equitable principle rested not in contract but resulted from the circumstances of each particular case. Most authorities term this "legal" subrogation as distinguished from "conventional" subrogation which results from an express agreement between the parties. In this case the defendants claim their equitable right of conventional subrogation, forming part of the mortgagee clause has been destroyed.

Certain fixed principles inhere to the equitable doctrine of subrogation. One is that the party invoking and seeking the benefit of the right must have paid the debt or other amount to the party to whose rights he seeks to be substituted. In this case the insurance has not been paid and the defendants seek to avoid the payment of an alleged legal claim because of the prior extinction of an equitable right. In the brief the defendants say:

"* * * The liability of the insurer to the mortgagee and the right of the insurer to be subrogated to the mortgagee security are inseparable correlatives. If the latter is destroyed, so is the former."

We cannot accede to this view in its entirety. The mortgagee clause itself provides "that no subrogation shall impair the right to recover the full amount of its claim." We think in this case the true rule is that the equitable right of subrogation is subject to the exercise by the mortgagee of his legal rights. If by the proper exercise of these legal rights, such as foreclosure, the equitable right which had not then come into existence is extinguished, then such destruction of the right of subrogation is no defense to the policy of insurance.

The cases bearing upon this phase of the matter are comparatively few but consistently reach the same conclusion as herein expressed.

In *Eddy v. London Assurance Corp.*, 143 *N. Y.* 311, 38 *N. E.* 307, 25 *L. R. A.* 686, and in *Brownsville Second National Bank v. London & Lancashire Ins. Co.*, 298 *Pa.* 53, 148 *A.* 35, questions of subrogation were involved. In

the one case foreclosure proceedings had been commenced before the fire and concluded after it and in the second case foreclosure proceedings were taken after the fire, but in both cases foreclosures had extinguished the right or possibility of subrogation.

Both of these cases are in point. While the date of the fire loss is the date upon which the rights of the beneficiaries are to be computed, yet no right of subrogation arose at that time. The date of the fire simply gave rise to a claim by the insured the payment of which by the insurer at a later time would give rise to a right of subrogation. The right of subrogation arises not from the fire loss, but from the payment by the insurer to the mortgagee. As said in *Ætna Ins. Co. v. Hann*, 196 *Ala.* 234, 72 *So.* 48, at page 51, "It is this securing of satisfaction by the insured which gives the insurer the right to be subrogated.  *   *   *"

Subrogation is an equitable right enforceable in the Court of Chancery. With this all authorities are agreed. In New Jersey, where the system of jurisprudence most closely resembles our own the foregoing principle is clearly established and it is only when the right to subrogation is "practically conceded, and there remains to be enforced only the right of realizing the value of the subject-matter, (that) such right may, on proper occasion, be within the cognizance of a court of law." *Polhemus v. Prudential Realty Corp.*, 74 *N. J. Law* 570, *at page* 578, 67 *A.* 303, 306.

In some states where there has been a blending of the legal and equitable jurisdictions and equitable defenses are interposed in legal actions, the equitable right of subrogation has been denied where the payment of the insurance has not been made. In *State v. Reynolds*, 289 *Mo.* 382, 232 *S. W.* 683, 689, the Court said, where the payment had not been made by the insurer, "the above subrogation, however, had nothing whatever to do with plaintiff's right to recover on the policy as mortgagees."

Of course, we are not passing upon any right of subrogation which the defendants may have had or may now have, but we simply say that where a mortgagee forecloses his own mortgage and becomes the purchaser that such fact, of and by itself, does not destroy the mortgagee's right under the policy of insurance because of the effect on the insurer's right of subrogation where the amount of the policy has neither been paid nor tendered.

The demurrers to the second and fourth pleas are, therefore, sustained.