**AETNA INSURANCE COMPANY,**
**Plaintiff,**

**v.**

**Lester C. NEWTON,** Lester C. Newton Trucking Company, C. F. Schwartz, Inc. and Continental Insurance Company, **Defendants.**

**Civ. A. No. 3024.**

United States District Court
D. Delaware.

Oct. 4, 1967.

Roger Sanders, Prickett, Ward, Burt & Sanders, Wilmington, Del., for plaintiff.

H. James Conaway, Jr., Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendants, Lester C. Newton and Lester C. Newton Trucking Co.

Harold Schmittinger, Schmittinger & Rodriguez, Dover, Del., for defendant C. F. Schwartz, Inc.

James L. Latchum, Berl, Potter & Anderson, Wilmington, Del., for defendant Continental Ins. Co.

## OPINION

STEEL, District Judge:

This action was brought by Aetna Insurance Company ("Aetna") against Lester C. Newton, Lester C. Newton Trucking Company (together referred to as "Newton"),[1] C. F. Schwartz, Inc. ("Schwartz"), and Continental Insurance Company ("Continental"). The litigation arises out of damage to commodities being transported from Salisbury, Maryland to Pennsylvania by Newton and Schwartz, two common motor freight carriers, who were operating under an "interchange" agreement.

---

1. Lester C. Newton and his wife each own 50% of the stock of the Lester C. Newton Trucking Company and Lester is the president thereof.

Aetna is the insurance carrier of Newton, and Continental is the insurance carrier of Schwartz.[2]

By the action Aetna seeks to obtain a declaratory judgment under 28 U.S.C. § 2201 that (1) Schwartz is obligated to pay Newton $11,116.95, (2) Continental is obligated to pay Schwartz's obligation to Newton and (3) Aetna is not obligated to pay any of the defendants any amount under the policy which it issued to Newton. Jurisdiction exists under the diversity of citizenship provisions of 28 U.S.C. § 1332(a) and (c).

Schwartz has moved for a summary judgment dismissing the action, and Aetna has moved for summary judgment against Schwartz in the amount of $12,-884.34. These motions must now be decided. The following background facts are not in dispute.

For sometime prior to April 18, 1963 an oral agreement existed between Schwartz and Newton to engage in an interchange of trucks and drivers in hauling commodities between Salisbury, Maryland and Pennsylvania. Schwartz held an ICC certificate to transport commodities from Salisbury to Wyoming, Delaware. Newton held an ICC certificate authorizing it to haul goods from Wyoming, Delaware to Pennsylvania. Through the interchange agreement shipments were transported from Salisbury to Pennsylvania in a single truck furnished by Schwartz, and control of the truck and the driver was taken over by Newton at Wyoming to complete the haul to Pennsylvania. In transporting goods from Pennsylvania to Salisbury the procedure was reversed. Under the oral agreement the liability for any loss to goods during transit was borne by the carrier which controlled the shipment at the time of the loss.

On April 18, 1963, Schwartz and Newton executed in Delaware a written agreement called the Master Interchange Agreement. Paragraph 4C(2) provided:

"The initial carrier shall:

\* \* \* \* \* \*

(2) indemnify and save harmless the receiving carrier against any claim by whomsoever filed arising from the operation of the motor vehicles and against any claim for loss or damage to any shipment or shipments being transported in said vehicle \* \* \*"

Paragraph 4D(5) provided:

"This agreement \* \* \* shall constitute the entire agreement between the parties."

Paragraph 4D(6) provided:

"This agreement is for a period of one year from the date hereof and shall continue in effect from year to year."

On July 27, 1963, Schwartz picked up at Salisbury goods owned by the Campbell Soup Company for delivery to a destination in Pennsylvania. At some time after control of the shipment had passed to Newton, a failure of the refrigeration equipment in the truck occurred with resultant damage to the goods. Newton paid Campbell Soup Company $11,116.95, the amount of the loss, and filed a counterclaim in this action against Aetna (its insurer) for reimbursement. On November 17, 1966 a judgment in the amount of $12,884.34 was entered in favor of Newton against Aetna, pursuant to a stipulation between them.[3]

Aetna's motion for summary judgment against Schwartz is based upon the claim that Section 4C(2) of the Master Interchange Agreement required Schwartz to bear the spoilage loss; and since Newton paid the loss and it (Aetna) has reimbursed Newton, it (Aetna) is subrogated to Newton's rights against Schwartz under Section 4C(2).

2. The action has been dismissed as to Continental, and the defendants presently are Schwartz and Newton only.

3. Presumably the difference between the amount which Newton paid to the Campbell Soup Company and the amount of the judgment which Newton obtained against Aetna represents interest between the time of the two payments.

Schwartz's motion for summary judgment to dismiss the action rests upon the contention that Section 4C(2) is irrelevant because, it is claimed, Newton and Schwartz both intended that Section 4 C(2) should not become effective until certain insurance arrangements had been worked out by them, and that these arrangements were not completed until October or November 1963, after the loss had taken place.

A disposition of the motions requires a determination of: (1) whether there is a genuine factual issue that the parties mutually intended that Section 4C (2) should not be operative when the loss took place; and if there is, (2) whether the issue is material. The question of materiality depends upon whether under the parol evidence rule the orally expressed intention of the parties as to the effective date of 4C(2) is admissible in evidence.

■ In ruling upon a motion for summary judgment all disputed facts and factual inferences must be resolved against the moving party. Associated Hardware Supply Co. v. Big Wheel Distributing Company, 355 F.2d 114, 121 (3rd Cir. 1966). This rule must be applied with respect to each of the motions.

*Schwartz's Motion*

■ The record reveals several facts that tend to refute Schwartz's claim that the parties to the Master Interchange Agreement did not intend Section 4C(2) to be effective when the loss occurred. The Agreement itself, paragraphs 4D(5) and 4D(6), indicates that the parties intended the entire agreement (no exception as to 4C(2) is specified) to be effective from and after April 18, 1963 when it was executed, and the written instrument to constitute the "entire agreement" between the parties. Further-

more, in paragraph 7 of Newton's answer to the complaint, it admits that the written agreement was in force on July 27, 1963 when the loss occurred, and no exception in favor of the exclusion of Section 4C(2) is stated. The answer which Newton filed to paragraph 10 of the complaint alleges that Schwartz is obligated under the written agreement to reimburse Newton. In paragraph 36 of its cross claim against Schwartz, Newton avers that under the written agreement, "especially Section 4C(2)", Schwartz is obligated to pay the full amount of the damage resulting from the loss.[4]

Moreover, Lester C. Newton filed an affidavit in support of its motion for summary judgment on its counterclaim against Aetna, its insurer. In it, Newton states that in July of 1963 his company was transporting commodities "under an interline or interchange agreement and arrangement with defendant C. F. Schwartz, Inc." and identifies the agreement as the writing of April 18, 1963. Here, again, Newton makes no claim that the operative effect of Section 4C(2) was otherwise than stated in the agreement. When Lester C. Newton's deposition was taken by Aetna on May 10, 1966, he admitted that the Newton company had made a demand on Schwartz to pay the loss (p. 33). Had Section 4C(2) not been in effect at the time of the loss Newton would have had no basis for making the demand. Under the pre-existing oral arrangement Newton alone would have been liable (Newton dep. pp. 45–46). The burden of the loss was changed by Section 4C(2) of the written agreement (Newton dep. p. 12). That was the purpose of the written agreement (Newton dep. p. 47). According to Hamstead, Newton's general manager, this was the only way in which the pre-

4. The answer and counterclaim of Newton are not verified. Nor can they be deemed to be admissions against Schwartz. Nevertheless, they are evidence of uncontroverted positions which Newton took, and were based upon the premise that Section 4C(2) was in effect when the loss occurred. The fact that this position was taken by Newton in the pleading is evidence which would be admissible at the trial. It may now be considered to refute Schwartz's contention that Newton did not intend 4C(2) to be effective from and after April 18, 1963 when the agreement was executed.

existing oral arrangement between Newton and Schwartz was changed (Hamstead dep. pp. 66, 103). The reason why Newton paid the claim in the first instance was because of its fear that its business with the Campbell Soup Company might be lost if it did not do so (Hamstead dep. pp. 47–48).

■ It is true that there is other evidence in the record, later to be discussed in connection with Aetna's motion for summary judgment, which would support a conclusion that neither of the parties to the written agreement intended Section 4C(2) to become effective until after certain insurance arrangements, not concluded until October or November 1963, had been consummated. As stated, however, in ruling upon Schwartz's motion that version of the evidence most favorable to Aetna must be accepted. Based upon that evidence, it is clear that the parties to the Master Interchange Agreement intended Section 4C(2) to become effective on April 18, 1963, when it was executed.

Schwartz's motion for summary judgment will be denied.

### Aetna's Motion

The record likewise contains evidence which, if accepted as it must be at this juncture, supports Schwartz's claim that Section 4C(2) was not intended to become effective until certain insurance arrangements had been consummated, and that this had not been accomplished prior to the loss. Schwartz, in answer to an interrogatory by Aetna, stated categorically:

"Neither party intended to be bound by paragraph 4C(2) until they agreed on a formula and obtained approval of their respective insurance companies. This was not accomplished until November 1, 1963."

Lester C. Newton testified in his deposition that: (p. 52)

"* * * the hold harmless clause [4C(2)] never went into effect, as far as [Newton] and Schwartz were concerned until about October of 1963 when [we] worked out the necessary insurance arrangements * * *"

The deposition testimony of Hamstead, Newton's manager, was substantially the same. He stated that prior to September 1963 he had an understanding with Schwartz that paragraph 4C (2) would not be in effect until an agreement had been worked out with respect to "percentages and had lined up insurance". (pp. 71–72) When Hamstead was asked about the integration provision of paragraph 4D(5), he stated in effect that despite the statement in paragraph 4D(5) to the contrary, the Master Interchange Agreement did not include the complete agreement because the insurance arrangement had not yet been decided upon (pp. 109–110).[5]

The evidence just discussed, if material as a matter of law, would require a denial of Aetna's motion for summary judgment. Aetna denies that it is relevant and argues that under the parol evidence rule it would not be admissible in evidence.

■■ Since the jurisdiction of this Court is based upon diversity of citizenship, it is required to follow the law of Delaware in applying substantive, as distinguished from procedural, law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In Delaware the parol evidence rule is deemed to have substantive significance, and it is not merely a rule of evidence. Long v. Morris, 128 F.2d 653, 141 A.L.R. 1041 (3rd Cir. 1942); Hull v. Brandywine Fibre Products Co., 121 F.Supp.

5. Schwartz argued that its letters of April 26, 1963 and September 4, 1963, are further corroboration that the parties did not intend 4C(2) to become effective on the day when the contract was executed. While the letters indicate that negotiations were going on between New-

ton and Schwartz with respect to certain insurance matters and to their participation in the income to be received on an interchange haul, the letters in no way refer to any deferment of the effective date of 4C(2).

108, 112 (D.Del.1954); Carey v. Shellburne, Inc., 224 A.2d 400 (Del.Sup.1966).

■■ This Court, of course, is not necessarily bound by the State Court's characterization of a matter as substantive or procedural in determining whether state law is binding upon it under the *Erie* doctrine. Sampson v. Channell, 110 F.2d 754, 128 A.L.R. 394 (1st Cir. 1940), cert. denied, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415. Nevertheless, Federal Courts in diversity cases have generally followed state law pertaining to parol evidence. Rock-Ola Mfg. Corp. v. Wertz, 282 F.2d 208 (4th Cir. 1960); Yoder v. Nutrena Mills, Inc., 294 F.2d 505 (8th Cir. 1961); Farmers Mutual Hail Ins. Co. of Iowa v. Fox Turkey Farms, Inc., 301 F.2d 697 (8th Cir. 1962), cert. denied, 371 U.S. 877, 83 S.Ct. 149, 9 L.Ed.2d 115; Associated Hardware Supply Co. v. Big Wheel Distributing Co., 355 F.2d 114 (3rd Cir. 1966).

■■ In Delaware the rule is that the parol evidence rule bars the admission of oral evidence to contradict, vary, add to, subtract from, or otherwise modify the terms of a written contract. Arthur Jordan Piano Co. v. Lewis, 4 W.W.Harr. 423, 154 A. 467 (1930). When a written contract is clear, its language is conclusively presumed to correctly express the intent of the parties and, in the absence of fraud or mistake, no parol suggestions to the contrary will be countenanced. Foreman's Systems, Inc. v. Milk Dealers' Crate Corp., 120 A. 358, 362 (Del.Ch.1923). In Carey v. Shellburne, Inc., supra, 224 A.2d p. 402 the Court said:

"The plaintiffs may not supplement and contradict by parol the plain intendment of their deeds."

Schwartz seemingly acknowledges the validity of this principle. It argues, however, that evidence tending to prove that an orally agreed upon condition precedent to the effectiveness of a written contract is admissible on the ground that such evidence does not add to, modify, or contradict the terms of the writing, rather it merely establishes that the parties did not intend the contract to come into existence prior to the fulfillment of the condition. This contention finds support in the *dictum* in Equitable Trust Co. v. Gallagher, 31 Del.Ch. 88, 67 A.2d 50, 55 (1949), aff'd, 32 Del.Ch. 401, 77 A.2d 548 (1950), wherein Chancellor Harrington stated:

"Ordinarily it is not a violation of the parol evidence rule to admit testimony tending to show a prior or contemporaneous oral agreement that a written instrument executed by the parties *was not to take effect until the happening of some agreed condition.* Stephens' Digest on Evid., Art. 90; Chamberlayne's H. B. Evid. 1111; Stabler v. Ramsay, [30] Del.Ch. [439], 62 A.2d 464; Wilson v. Powers, 131 Mass. 539." (Emphasis added).

Chancellor Harrington's views appear to be consistent with the law generally. 4 Williston, Contracts (3rd Ed.) § 63 states:

"[E]vents antecedent to the making of the contract which negate mutuality of assent, such as duress or fraud, or demonstrate a condition to be fulfilled before the obligations of the contract are to vest, may also be the subject of parol evidence."

■ It is to be noted, however, that no Delaware decision has passed upon the significance of a clause like paragraph 4D(5) of the Master Interchange Agreement which states in express terms that the writing constitutes the "entire agreement" between the parties. This Court is therefore called upon to predict the relevance which a Delaware Court would attribute to such a clause in the context of the parol evidence problem should such an occasion arise. In doing so, it may look to such sources as the Restatement of Law, treatises and law review commentaries, and the majority rule. Stentor Electric Mfg. Co. v. Klaxon Co., 125 F.2d 820 (3rd Cir. 1942), cert. denied, 316 U.S. 685, 62 S.Ct. 1284, 86 L.Ed. 1757.

■ In 3 Corbin, Contracts, § 589 (1960), p. 545, it is stated that the parol

evidence rule is "so variable in its operation as to be the despair of law teachers and law writers". In J & J Construction Co., Inc. v. Mayernik, 241 A. 537, 407 P.2d 625 (1965), the Court stated that Professor Corbin might well have added "and of practicing lawyers and judges." Nonetheless, Professor Corbin concludes the refusal to admit parol evidence to show that a writing was not intended to be effective prior to the occurrence of a condition precedent, would do far more harm than good. 3 Corbin, Contracts § 589 (1960). For this reason he approves the decisions which hold that the parol evidence rule is not a bar to proving by oral evidence that a written agreement was not intended to take effect until after the occurrence of a condition precedent.

However, the view of Professor Corbin is otherwise when a written document declares in express terms that it contains the entire agreement of the parties and that there are no antecedent or extrinsic representations, warranties, or collateral provisions that are not intended to be discharged and fulfilled. In such event, Professor Corbin states, the written declaration should be binding upon the parties unless it is set aside for fraud, mistake or some other generally accepted ground for avoiding a contract. Many cases, both State and Federal, are cited in support of this conclusion. See, 3 Corbin, Contracts § 578 (1960), note 39, page 403.

While paragraph 4D(5) of the Master Interchange Agreement is not so all-embracing as the integration language referred to by Professor Corbin, it is nonetheless within the rationale of his opinion and the cases which he cites. This is implicitly recognized in 4 Willis-

ton, Contracts (3rd Ed.) § 633, p. 1014, which states:

"If [the parties] provide in terms that the writing shall be a complete integration of their agreement * * * the expressed intention will be effectuated."

Conversely, the author states at p. 1015:

"No written contract which does not in terms state that it contains the whole agreement * * * precludes the possible supposition of additional parol clauses, not inconsistent with the writing."

Admittedly, there are cases which take a contrary view. Plant Flour Mills Co. v. Sanders & Ellis, 172 Miss. 539, 157 So. 713 (1934); White Showers, Inc. v. Fischer, 278 Mich. 32, 270 N.W. 205 (1936); Kryl v. Mechalson, 259 Wis. 204, 47 N.W. 2d 899 (1951); Luther Williams, Jr., Inc. v. Johnson, 229 A.2d 163 (D.C.Munic.Ct. App.1967). Obviously, these decisions fail to give the integration clause the effect which Professors Corbin and Williston would accord it. The rationale of these decisions is that despite the integration clause, since the written contract was silent on the specific subject of the oral testimony, the oral testimony on that subject would in no way contradict any specific term of the written agreement.

 Even under the approach taken by these decisions, the parol evidence relied on by Schwartz in the instant case would be inadmissible because it would contradict the specific terms of the agreement.[6]

Paragraph 4D(6) of the Master Interchange Agreement provided that it should run *from April 18, 1963* for a period of one year, and no exceptions were made in favor of Section 4C(2). Parol evidence to establish that Section 4C(2) would become effective at a later date

---

6. Under the circumstances of this case the principle enunciated in Restatement, Contracts § 241 would also render the parol evidence inadmissible, even in the absence of an integration clause. Section 241 reads:

"Where parties to a writing which purports to be an integration of a con-

tract between them orally agree, before or contemporaneously with the making of the writing, that it shall not become binding until a future day or the happening of a future event, the oral agreement is operative if there is nothing in the agreement inconsistent therewith."

would therefore fly in the face of the express language of Section 4D(6).

Finally, it should be noted that this case involves a feature which is somewhat unusual. Here the quarrel is not between Newton and Schwartz, the parties to the written contract. Schwartz's reliance upon evidence *dehors* the writing is advanced against Aetna who was not a party to the contract. In 4 Corbin, Contracts § 596 (1960) p. 574, the author recognizes that numerous cases hold that parol evidence which would be inadmissible as between the parties to a written contract, is nevertheless admissible when offered for or against a third party. According to Professor Corbin no such distinction is warranted (p. 572). Any such distinction in the present case would be especially misplaced since Aetna, as subrogee of Newton, in effect stands in Newton's shoes. Compare, Kimberly & Carpenter, Inc. v. National Liberty Ins. Co. of America, 5 W.W.Harr. 63, 157 A. 730 (1931).

The Aetna motion for summary judgment will be granted.