QUEEN INS. CO. v. PEOPLE'S UNION SAV. BANK.

No. 4464.

Circuit Court of Appeals, Third Circuit.

May 29, 1931.

Horace M. Schell, of Philadelphia, Pa., for appellant.

Wm. W. Hall and J. Harold Flannery, both of Pittston, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a judgment upon a directed verdict in favor of the appellee, hereinafter called the savings bank, in a suit brought upon a policy of fire insurance issued by the appellant to, and covering the buildings of, the Sheridan Silk Mills Company, hereinafter called the silk mills. The savings bank held a mortgage for $12,000 on the land and buildings of the silk mills. The policy in suit was for $10,000, and contained a mortgagee clause, the pertinent parts of which are as follows: "Loss or damage, if any, under this policy, shall be payable to Peoples Union Savings Bank of Pittston, Pa., as first mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same."

While the policy was in effect, the buildings insured were damaged by fire to the extent of $11,953. Without the knowledge of the savings bank, the mortgagee, the silk mills, the mortgagor, had obtained additional insurance upon its buildings, issued by the Commonwealth Insurance Company, to the amount of $30,000, $10,000 of which was upon a policy payable to the silk mills and $20,000 upon a binder, under which $12,000 was payable to the savings bank, mortgagee, $6,000 to one Lee S. Stark, and $2,000 to the silk mills.

The savings bank brought suit against the Queen Insurance Company claiming under the mortgagee clause of the policy for $10,000. Before that suit came to trial, it joined with the other parties insured in a suit against the Commonwealth Insurance Company on the $20,000 binder.

The suit involved here was brought to trial twice in the court below. Upon the first trial, the court directed a verdict for the plaintiff in the sum of $4,192.81 upon the ground that the amount recoverable by the mortgagee must be prorated between the defendant company and the Commonwealth Insurance Company, in view of the following clause contained in the policy of insurance in suit: "Pro rata liability. This Company shall not be liable for a greater proportion of any loss or damage than the amount hereby insured shall bear to the whole insurance covering the property, whether valid or not, and whether collectible or not."

The savings bank moved for a new trial, alleging error in the direction of a verdict based upon the prorating of loss, and a new trial was granted.

Upon the second trial the court directed the jury to render a verdict for the plaintiff in the sum of $11,500, the full amount of the policy with interest. From judgment upon that verdict, this appeal is taken.

 The case turns upon the construction of the mortgagee clause of the policy in its bearing upon the pro rata liability clause. We have here a contract of insurance entered into for the benefit of the mortgagee in which the insurer agrees that the insurance of the mortgagee shall not be invalidated by any act or neglect of the owner of the property. That applies, among other things, to the act of obtaining, by the silk mills, other insurance of its own interest with the Commonwealth Insurance Company without the knowledge or consent of the savings bank, the mortgagee. The effect of the mortgagee clause is to make an entirely separate insur-

ance of the mortgagee's interest, and he takes the same benefit from his insurance as if he had received a separate policy from the company free from the conditions imposed upon the owners. Eddy v. London Assur. Corporation, 143 N. Y. 311, 38 N. E. 307, 309, 25 L. R. A. 686. In that case, Justice Peckham well states the ground of the court's conclusions as follows: "Where the company agreed that the mortgagee's insurance should not be 'invalidated' by any act or neglect of the owner of the property it was not intended to limit the application of that word to a case where the whole policy would otherwise be rendered invalid. The plain and obvious meaning of the language is that the insurance of the mortgagee should not be affected or in any wise impaired or lessened by any act or neglect of the owner. Although contained in the same policy issued to the owner, yet the insurer and the mortgagee were nevertheless entering into a perfectly separate contract of insurance, by which the mortgagee's interest alone was to be insured, and it would be most natural to provide that no act or neglect of the owner should invalidate—that is, impair—any portion of the insurance thus separately secured. Can it for a moment be supposed that a mortgagee would otherwise ever consent to such a contract? His desire is to obtain security, and to that end he insures his interest in the property. Would he knowingly consent that this security should be liable to be wholly frittered away and made valueless by the action of the owner, unknown to him, in procuring insurance upon the owner's interest in the property? Would any sane man agree to hazard his security in such a way? Would he agree that the value of his security should depend upon the acts of a third party over whom he had no control, and of whose acts he might be wholly ignorant? The statement of the proposition is its best refutation."

The law in Pennsylvania is thus stated by Judge Linn in Trustee Building & Loan Ass'n v. Liverpool & London & Globe Ins. Co., 93 Pa. Super. Ct. 242 (cited in the opinion of the court below): "It is settled that the effect of adding the union mortgagee clause to the policy is to constitute an insurance of the mortgagee's interest,—an interest distinct from the owner's—and that the result is a new insurance contract composed of the provisions in the clause and such of those in the policy as are essentially applicable to the mortgagee-clause and the mortgagee's interest; that not all of the provisions of the contract with the owner stated in the policy govern the contract insuring the mortgagee's

interest: [Knights of Joseph, B. & L.] Assoc. v. Insurance Co., 66 Pa. Super. Ct. 90; Reed v. Insurance Co., 67 Pa. Super. Ct. 110; Swoope v. U. S. Fire Ins. Co., 87 Pa. Super. Ct. 349. This conclusion is in accord with the weight of authority on the subject; see Joyce on Insurance, Vol. 3, section 2795; Richards' Insurance Law, 396 etc.; Cooley Briefs on Insurance, Vol. 1, p. 777."

And the same rule prevails in the federal courts; see Syndicate Insurance Co. v. Bohn (C. C. A. 8) 65 F. 165, 27 L. R. A. 614; Insurance Company of North America v. International Trust Co. (C. C. A. 8) 71 F. 88 (certiorari denied 163 U. S. 691, 16 S. Ct. 1202, 41 L. Ed. 316); Newark Fire Insurance Co. v. Turk (C. C. A. 3) 6 F.(2d) 533, 43 A. L. R. 496.

When the fire occurred, the contract under the policy with the Queen Insurance Company became effective. At that time no other insurance was existing which had been created with the savings bank's knowledge or consent. It is, however, contended for the appellant that, when the savings bank, after bringing suit upon the Queen Insurance Company's policy, joined with others in bringing suit against the Commonwealth Insurance Company upon the binder, it thereby adopted and ratified the pro rata clause notwithstanding the fact that it had no knowledge of the existence of the binder prior to the loss.

But the mortgagee clause in the policy constitutes a contract of insurance entirely separate and distinct from any provisions applying exclusively to the relations between the mortgagor and the insurance company.

The savings bank had no agency whatever in taking out the insurance covered by the Commonwealth Insurance Company binder and had no knowledge of its existence until after the loss. When the loss occurred, the rights of the parties had become fixed. So far as the appellant was concerned, the action of the appellee thereafter exerted and could exert no influence upon the conduct of the appellant in respect to the creation or continuance of the risk, for the policy had matured by the law, it had ceased to be, except for the purpose of collection. The moral hazard had ceased to exist. These elements could not be restored by ratification in view of the terms of the contract that "this insurance as to the interest of the mortgagee only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property." Cowart v. Capital City Insurance Co., 114 Ala. 356, 22 So. 574 (1896); Gould v. Maine Farmers' Mut.

Fire Ins. Co., 114 Me. 416, 96 A. 732, L. R. A. 1917A, 604; Titus v. Glen Falls Insurance Co., 81 N. Y. 410; Dwelling House Ins. Co. v. Garner, 56 Ill. App. 199.

Finding no error in the record, the judgment of the District Court is affirmed.