T. P. Mikell and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., for plaintiff.

Horace M. Schell, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

The suit is by the first mortgagee of insured property against the insuring company, and the case turns upon the construction of the mortgagee clause attached to the policy. The facts, admitted by the pleadings, are as follows:

On September 9, 1931, buildings owned by one Esther Charlestein and having an agreed value of $43,985 were damaged by fire for a total loss of $24,374.90. At the time of the fire there were two mortgages upon the property; a first mortgage of $30,000 held by the plaintiff, and a second mortgage of $15,000 held by a building and loan association. The defendant had insured the property for $30,000 with a standard mortgagee clause making the loss payable to the

---

**PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES v. OHIO FARMERS' INS. CO.**

No. 16744.

District Court, E. D. Pennsylvania.

Dec. 22, 1933.

plaintiff in accordance with its terms. There was also another policy of $15,000 written by another company in favor of the second mortgagee under a similar clause.

The controversy is as to the amount payable by the defendant to the plaintiff. In addition to the mortgagee clause there was attached to the plaintiff's policy another rider; a standard form frequently referred to in insurance parlance as the "Co-insurance Clause" but, in the printed form used, headed "Reduced Rate Average (Contribution) Clause." This clause provided, in substance, that in the event of loss, in case the insured had failed to insure his property to at least 80 per cent. of its actual cash value, the company will be liable only for such fraction of the loss as the insurance carried is of 80 per cent. of the cash value of the property. The pertinent language of the clause is: "* * * In the event of loss this company shall be liable for no greater proportion thereof than the amount hereby insured bears to * * * 80 per cent. * * * of the actual cash value of the property described herein at the time when such loss shall happen. * * *"

The defendant, conceding that the total insurance upon the property was more than 80 per cent. of its cash value so that the entire loss must be paid to some one, contends that the coinsurance clause in the policy is binding as between it and the plaintiff. And, since the plaintiff's policy is substantially less than 80 per cent. of the cash value of the property, it would follow that the defendant is liable to the plaintiff for only a major fraction of the amount of the loss and to the second mortgagee for the balance. The plaintiff's position is that the coinsurance clause is not applicable to it, and it therefore claims the entire amount of the loss.

Without unnecessarily complicating this statement of facts by going into the mathematics involved, it may be said that the parties have agreed that, if the defendant's position is correct, it owes the plaintiff $16,629.-54. If it is not correct, then it owes the plaintiff the entire amount of the loss up to the amount of insurance carried upon each of the buildings damaged, which amounts to $20,460.90. The defendant has paid the sum admitted to be due, and this suit is for the difference between it and the amount claimed by the plaintiff, or $3,831.86.

In all respects but one (which will be considered later on), this mortgagee clause is the standard form which, beside making the loss payable to the mortgagee, provides that the insurance shall not be invalidated by any act or neglect by the mortgagor or owner of the property, and enumerates certain specific acts or neglects which shall not affect the mortgagee's interest, such as change of title and increase of hazard. The effect of this provision has many times been considered by the courts and, after some early confusion, it became well established that the result of adding the standard mortgagee clause to the policy is to create an entirely new and separate contract between the mortgagee and the insurer, "as if he (the mortgagee) had received a separate policy from the company, free from the conditions imposed upon the owners." Eddy v. London Assurance Corporation, 143 N. Y. 311, 38 N. E. 307, 309, 25 L. R. A. 686, 62 Am. St. Rep. 316. The Circuit Court of Appeals for the Third Circuit has adopted this view. Queen Insurance Company v. People's Union Savings Bank, 50 F.(2d) 63. The mortgagee was thus protected from the effects of defaults, breaches of condition, and violation of the terms of the policy upon the part of the mortgagor.

The next question which arose was whether the mortgagee's interest in the proceeds was liable to be, not entirely invalidated, but diminished in amount by one of the standard provisions known as the "Pro Rata Liability Clause." This clause provides that in the event of other insurance the company shall prorate the loss with the other insurers; that is, be liable only for such proportion of the loss as the amount of its policy bears to the total insurance. The Circuit Court of New York met this question in Eddy v. London Assurance Corporation, supra, and decided that this clause would not affect in any degree the right of the mortgagee under a standard mortgagee clause to recover the full amount of the loss as though no other insurance had been written. This rule can now be taken as settled law. See Queen Insurance Company v. People's Union Savings Bank, supra.

When, however, the effect of the coinsurance clause upon the mortgagee's rights came to be considered, a different view was taken, and the mortgagee's interest was subordinated to the policy and held to be subject to impairment by the owner's failure to carry the required amount of insurance, although there are apparently only three decisions in which this question is involved and the law can hardly be said to be finally settled. In Savarese v. Ohio Farmers' Insurance Company (1932) 260 N. Y. 45, 182 N. E. 665, 91 A. L. R. 1341, the Court of Appeals of New York, following an earlier decision of the Appellate Division of the Supreme Court, held that the mortgagee was bound by the co-

insurance clause. The theory of this ruling appears to be that the coinsurance clause is not a condition which may operate to affect an obligation already in being, but rather a definition of the obligation itself. That is to say, it becomes effective coincidently with and as a part of the obligation to insure, goes to its essence, and consequently is not affected by the mortgagee clause which was supposed to protect against breach of condition. A strong dissenting opinion criticizes the majority view from the standpoint both of logic and policy, and presents some arguments which are not easy to answer. Nevertheless, if the case at hand depended upon the standard mortgagee clause without more, I should feel that I ought to follow the earlier decision of this court in the case of Pennsylvania Company v. Aachen & Munich Fire Ins. Co., 257 F. 189, which reaches the same conclusion as the Savarese Case by slightly different reasoning.

█ The mortgagee clause in this policy, however, contains something in addition to the ordinary standard form. It reads as follows:

"New York and Pennsylvania Standard Mortgagee Clause
"(Non-Contribution)

"Loss or damage, if any, under this policy, shall be payable to," etc. (Then follows the usual form.)

In my opinion the addition of the words "(Non-Contribution)" indicate an intention on the part of the parties to exclude the mortgagee from the operation of the coinsurance clause, and should be given that effect.

In determining the import of these words, two questions arise: First, do they refer to the coinsurance clause; second, if so, were they intended to be part of the contract between the mortgagee and insurance company and to affect their contractual relation?

As to the first question, it seems almost beyond doubt that these words have reference to the "contribution" created by the coinsurance clause because (a) that is the only clause of the policy which is specifically denominated a "Contribution" clause, and in fact is the only clause in the policy which uses the words "contribution" at all; and (b) the only other clause which could possibly be referred to is the pro rata liability clause which, under well-settled rules of law, was already excluded by the standard mortgagee clause itself, so that words of specific exclusion would be superfluous.

█ As to the second question, of course the words were put where they are to serve some purpose, and we may not assume that the parties were merely filling a blank space with a pattern of letters. The defendant accounts for their presence by the theory that they were intended not as having any effect upon the contract between the parties, but merely as a heading or description of it. The trouble with this view is that if we adopt it (having found that the words refer to the coinsurance clause) we must also conclude that the parties erroneously described the clause as something which it is not—much as though a deed had been given headed "Special Warranty Deed" which contained instead a clause of general warranty. The law is clear that the standard mortgagee clause is not a "Non-Contribution" clause. On the contrary, if the standard form is used without more the mortgage is subject to the contribution enforced by the coinsurance clause. So, if the parties meant only to give this clause a name, they chose the wrong words. Of course this is possible, but it is not a construction which should be adopted if another which gives a harmonious effect to the words and clause together can reasonably be found.

The view that these words were intended to be an effective part of the contract between the insurer and mortgagee, and, as such, to exclude the coinsurance clause is by far the most reasonable construction that can be put upon them.

█ When the parties came to attach the standard mortgagee clause to their policy, they must be presumed to have known what was the law; namely, that they were making a new contract and that the words, "this insurance * * * shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, * * *" would protect the mortgagee's interest from impairment against most, but not all, of the mortgagor's acts. As to the coinsurance clause, the Savarese Case had not been decided when this policy was written, and the matter was certainly still open to construction in spite of the single decision of this court in the Aachen Case. It was perfectly competent for the parties to agree upon a construction by which the words quoted should operate to exclude the coinsurance clause also. As Judge Linn said in Trustee Building & Loan Association v. Liverpool & L. & G. Insurance Company, Ltd., of London, 93 Pa. Super. Ct. 242, they were making a contract "composed of the provisions in the clause and such of those in the policy as are essentially applicable to the mortgagee-clause and the mortgagee's interest." They had the right to decide for themselves what

704

provisions were applicable and what not. They could do it by two words as well as by a whole paragraph, and when they wrote at the head of this clause the words "Non-Contribution" it was a plain declaration that for the purposes of the contract with this mortgagee the coinsurance clause of the policy should not affect the mortgagee's rights.

I therefore hold that in this case the coinsurance clause does not apply, and judgment may be entered for the plaintiff, with interest.