## KIMBERLEY & CARPENTER, Inc., v. FIREMAN'S FUND INS. CO. et al.

### No. 962.

District Court, D. Delaware.

Jan. 2, 1934.

Clarence A. Southerland (of Ward & Gray), of Wilmington, Del., for plaintiff.

Caleb S. Layton (of Richards, Layton & Finger), of Wilmington, Del., and S. Ralph Warnken, of Baltimore, Md., for defendants.

NIELDS, District Judge.

This is an equity suit removed to this court from the Court of Chancery of the state of Delaware. The dockets of the Superior Court for New Castle county, Del., record (1) two judgments in favor of the plaintiff against the defendants in the aggregate amount of $6,606.74 and $500 counsel fees, which judgments it is agreed are not vulnerable or subject to attack from any

quarter; (2) a judgment in favor of defendants against the plaintiff for $5,000, with interest, upon which an attachment fi. fa. has issued. By the bill filed in this suit plaintiff seeks to enjoin the defendants from proceeding with the above attachment and "from issuing any further writ of execution on said judgment," and from instituting any action on a certain mortgage given to secure the debt represented by that judgment.

The facts may be gathered from the stipulated statement. September 1, 1925, plaintiff purchased a tract of land with dwelling house and barn erected thereon, and contemporaneously gave its bond and mortgage for $5,000 covering the same to Security Trust Company. May 25, 1926, plaintiff sold the premises to Jacob D. Winslow and Catherine A. Winslow, his wife, subject to the above mortgage. On the same day the Winslows gave a second mortgage for $6,000 to plaintiff to secure part of the purchase money. May 27, 1926, each defendant insured the Winslows, as owners, against loss by fire for three years from May 25, 1926, for $6,000. The total insurance covering the dwelling house was $11,000. Both policies of fire insurance issued by defendants were the standard policies containing the condition that: "This entire policy * * * shall be void * * * if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed; or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance," etc.

May 28, 1926, standard mortgagee clauses payable to the respective mortgagees were attached to each policy. The mortgagee clauses payable to Security Trust Company, as first mortgagee, were:

"Loss, or damage, if any, under this policy shall be payable to Security Trust and Safe Deposit Company as First mortgagee, (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee, (or trustee), only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided, also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice, to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right, on like notice to cancel this agreement.

*"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of its claim."* (Italics supplied.)

Mortgagee clauses of similar tenor, payable to Kimberley & Carpenter, Inc., as second mortgagee, were also attached to the policies.

In May, 1928, the Winslows failed to pay an installment of principal and the interest then due on plaintiff's mortgage, and, with their knowledge, foreclosure proceedings under this second mortgage were commenced and notice was given of the sale of the property covered by the policies. Judgment of foreclosure was duly entered, and on October 25, 1928, plaintiff purchased the property to protect its mortgage interest and received a deed therefor. About six months later, on April 11, 1929, the dwelling house was burned to the ground. Both plaintiff and Security Trust Company gave notice of the fire to defendants, together with proofs of loss. De-

fendants denied all liability to plaintiff on the ground that plaintiff ceased to be a mortgagee when it acquired title to the premises at the foreclosure sale.

Pursuant to the express provision in the mortgagee clause, on January 2, 1930, defendants paid to Security Trust Company the whole principal with interest due on the mortgage of plaintiff, being the first mortgage on the premises, and thereupon received a full assignment and transfer of the mortgage and of the bond accompanying same. Subsequently, on January 29, 1932, defendants caused judgment to be confessed upon said bond and a writ of attachment fi. fa. to be issued and laid in the hands of defendants through service upon the insurance commissioner of Delaware.

Plaintiff brought actions in the state court of Delaware to recover the amounts due to it under the policies. Issues of law and fact were tried. Kimberley & Carpenter v. National Liberty Ins. Co. (Del. Super.) 157 A. 730, 732. On March 30, 1932, it was determined that $6,606.74 was due to plaintiff from defendants, and judgments were accordingly entered.

From the above recital one conclusion is bound to follow. When plaintiff foreclosed its mortgage—the second mortgage mentioned in the policies—and purchased the premises at sheriff's sale on October 25, 1928, the insurance agreement between defendants and the Winslows, the owners, was rendered null and void. By the express condition and stipulation of the policies, hereinbefore set out, the obligation of defendants to the owners became void upon the foreclosure, sale, and change of ownership of the premises insured. Thereafter there was no agreement with owners or owner in either the policies or the mortgagee clauses. What obligation of defendants remained?

Standard mortgagee clauses like those contained in the policies before the court have been held for many years to be separate and largely independent contracts. Richards on the Law of Insurance (4th Ed.) § 279. "The effect of the joint consideration of the policy and the mortgagee clause is that two severable contracts are set up—one in favor of the insured-mortgagor and the other in favor of the insured-mortgagee. The latter is distinct from the former and the rights of the mortgagee are subject to be defeated only by a violation of the terms set out in the mortgagee clause." Kimberley & Carpenter v. National Liberty Ins. Co., supra. Here each policy embraces three contracts: (1) The contract between defendants and the owners; (2) the contract between defendants and Security Trust Company in one mortgagee clause; and (3) the contract between defendants and plaintiff in the second mortgagee clause. In October, 1928, the policy became void as to the owners, yet the mortgagee clauses containing separate agreements remained. There may be some difficulty in detecting any contract relation between defendants, the underwriters, and the mortgagees. The mortgagees gave no consideration, and are not parties to any agreement. However, to reach a happy result, the courts have declared there is a contract relation.

The federal courts hold the mortgagee clause a separate contract. "The effect of the mortgagee clause is to make an entirely separate insurance of the mortgagee's interest, and he takes the same benefit from his insurance as if he had received a separate policy from the company free from the conditions imposed upon the owners." Queen Ins. Co. v. People's Union Sav. Bank (C. C. A. 3) 50 F.(2d) 63, 64. "It is equally true that the mortgagee clause of a policy, providing for payment of indemnity to the mortgagee in the event of loss, is not an assignment of the policy, yet that clause creates a separate and distinct agreement between the insurer and the mortgagee, binding even after the insured owner has alienated his property." Newark Fire Ins. Co. v. Turk (C. C. A. 3) 6 F.(2d) 533, 535, 43 A. L. R. 496. "It is true," said Judge Sanborn, "that the Bohns [the owners] paid the premiums for this insurance, but a promise to pay or indemnify is no less binding when the consideration is paid by a third party than when it comes directly from the payee or the insured. Insurance Co. v. Olcott, 97 Ill. 439, 454, and cases there cited. The agreement evidenced by this mortgage clause was therefore a valid contract between the mortgagee and the insurance companies, made upon sufficient consideration. * * *" Syndicate Ins. Co. v. Bohn (C. C. A.) 65 F. 165, 176, 27 L. R. A. 614.

Both plaintiff and Security Trust Company are alike beneficiaries and payees under separate contracts of indemnity in mortgagee clauses. Plaintiff as mortgagee (or as mortgagee-owner after the foreclosure) sued defendants on their agreement to indemnify plaintiff and recovered judgment against defendants. Plaintiff's rights under its contract of indemnity have been passed upon by the state court. Kimberley & Carpenter v. National Liberty Ins. Co., supra.

In this court we are considering defend-

ants' rights. In the mortgagee clause on behalf of the Security Trust Company, as first mortgagee, there is an express provision giving defendants the right of subrogation whenever it appeared to the satisfaction of the court that no liability existed under the policies to the Winslows, the mortgagors. That defendants were not liable under the policies to the mortgagors or owners is admitted. Accordingly, defendants paid to Security Trust Company the whole principal due on their mortgage, with interest, and received a full assignment and transfer of the mortgage and of the judgment bond which the mortgage secured. In due course judgment was confessed pursuant to the terms of the bond, and an attachment fi. fa. was issued, as before recited.

Defendants' right of subrogation under one of the mortgagee clauses, also their right to the assignment of plaintiff's bond and mortgage and their right to proceed at law thereunder, must be respected and protected quite as fully in a court of equity as plaintiff's right of action against defendants on defendants' agreement to indemnify plaintiff as mortgagee contained in the other mortgagee clause has been recognized and enforced in a court of law. This court recognizes defendants' right of subrogation, and will not enjoin its exercise.

It is clear that the injunctive relief sought by plaintiff should be denied and that the bill of complaint should be dismissed.