**KIMBERLEY & CARPENTER, Inc., v. FIREMAN'S FUND INS. CO. et al.**

**No. 5539.**

Circuit Court of Appeals, Third Circuit.

May 22, 1935.

BUFFINGTON, Circuit Judge, dissenting.

Clarence A. Southerland and Ward & Gray, all of Wilmington, Del., for appellant.

Richards, Layton & Finger, of Wilmington, Del., and Cook & Markell, of Baltimore, Md. (S. Ralph Warnken, of Baltimore, Md., and Caleb S. Layton, of Wilmington, Del., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

The question involved on this appeal is so linked with the facts of the case that it has been impossible for counsel or ourselves to state it shortly and concisely as required by Rule 24, section 2 (c), of this court. It will, for the moment, be enough to say that the question is whether, under policies of fire insurance containing standard mortgagee clauses, the defendant insurance companies, after paying the first mortgagee and succeeding to its rights by subrogation, are entitled to set off the amount paid the first mortgagee against the amount due the second mortgagee.

The facts out of which the matter arose are stated at length in Kimberley & Carpenter, Inc., v. Insurance Co. (Del. Super.) 157 A. 730 and Kimberley & Carpenter, Inc., v. Insurance Co. (D. C.) · 6 F. Supp. 255. Referring to those cases for an understanding of the controversy in its several phases, we shall give only the facts which will bring the present question into view.

· Kimberley & Carpenter, Inc., to which we shall refer as the plaintiff, acquired in fee a tract of land with a dwelling and out buildings thereon erected. On the same day the plaintiff borrowed from the Security Trust and Safe Deposit Company $5,000 on its bond and mortgage; the bond evidencing the debt, the mortgage being special security for its payment and being a first lien upon the property. Later, the plaintiff sold and conveyed the property to Jacob D. Winslow and his wife subject to its mortgage held by the Trust Company. At the same time Winslow and his wife, of whom we shall speak as Winslow, executed and delivered to the plaintiff for a part of the purchase price their bond and mortgage for $6,000, to which we shall refer as the second mortgage. Each of the defendant fire insurance companies issued to Winslow a policy insuring the buildings for $6,000, making a total insurance of $12,000. The insurance covering the dwelling was $11,000. Each policy, carrying two standard mortgagee clauses to which we shall advert presently, provided: "Loss, if any, payable to Security Trust & Safe Deposit Company, first mortgagee, and balance, if any remaining, to Kimberley & Carpenter Corporation, 2nd. mtg."

Rather promptly, Winslow defaulted on his mortgage payments. Thereupon the plaintiff, the second mortgagee, instituted foreclosure proceedings, obtained judgment, issued execution, bought the property at sheriff's sale and acquired title by sheriff's deed—subject to its own first mortgage still held by the Trust Company. Thus, Winslow, having no longer an insurable interest in the property, passed out of the policies. According to the legal status, distinguished from the insurable status, of the parties at that time, the plaintiff, having foreclosed the second mortgage and acquired the fee, ceased to be second mortgagee and became the owner of the property and the Trust Company remained the first and only mortgagee.

In this state of things the dwelling was destroyed by fire. The plaintiff and the Trust Company demanded of the insurance companies payment for losses under the standard mortgagee clauses. This the insurance companies for various reasons refused. Whereupon both the plaintiff and the Trust Company, by separate actions, sued the insurance companies in a court of the State of Delaware. Pending these suits, the insurance companies settled with the Trust Company, paid its claim and took over by assignment the bond and mortgage (called the first mortgage) which the plaintiff had executed and delivered to the Trust Company long before. With these securities in their portfolios the insurance companies defended the suits which the plaintiff had brought on the standard mortgagee clause covering its second mortgage. At the trial the plaintiff recovered judgments against the insurance companies on the theory that, although it had foreclosed its second mortgage and by sheriff's deed had acquired the fee of the property, its interest before and after the sale was "essentially the same," and in consequence it still had an insurable interest in the mortgage and suable interests under the standard mortgagee clauses. 157 A. 730.

Declining to inquire into or otherwise disturb the judgments of the state court, we accept them as one of two new starting points in the statement of this case. The other is a judgment which in the meantime the insurance companies had recovered against the plaintiff in the same state

court by entering the plaintiff's bond which the Trust Company had assigned to them on receiving payment under the standard first mortgagee clauses.

Thus it happened that two judgments, or groups of judgments, were outstanding: One of the plaintiff against the insurance companies; the other of the insurance companies against the plaintiff for very nearly the same amounts. All were judgments at law evidencing with adjudicated finality indebtedness of one party to the other. On demand, each party refused to pay the other. The insurance companies, however, have always been willing to pay the plaintiff the amount of its judgments against them after first deducting therefrom, on a theory to be stated later, the amount of their judgment against the plaintiff which was entered on its bond assigned to them by the Trust Company.

The insurance companies brought things to a head by issuing an attachment fi. fa. on their judgment against the plaintiff by which, evidently, they sought to attach funds in their own hands due the plaintiff on its judgments against them. Thereupon the plaintiff instituted suit in the Court of Chancery of the State of Delaware by bill in equity praying that an injunction issue restraining the insurance companies from proceeding with their execution.

The suit was removed to the District Court of the United States for the District of Delaware which, trying the case on bill, answer and an agreed statement of facts, dismissed the bill. The plaintiff took this appeal.

The question tried and decided by the court below and brought here on appeal is not, as we view it, a question of equity but is one of law. It is not affected by oral agreements, representations or conduct of the parties but arises solely out of the written contracts of insurance into which they entered and out of which alone their rights grew and by which alone they are bound. Therefore we have taken up the policies and have held fast to them throughout our consideration of the case.

■ Under the accepted interpretation of standard mortgagee clauses, distinguished from old "loss payable" clauses, Kimberley & Carpenter, Inc., v. Nat. Liberty Insurance Co. (Del. Ch.) 157 A. 730 and Kimberley & Carpenter v. Fireman's Fund Ins. Co. (D. C.) 6 F. Supp. 255, the policies contained three separate and largely independent contracts running in favor of three different persons whereby the insurers engaged to indemnify them, in case of loss by fire, in the order and to the extent of their respective insurable interests: (1) The Trust Company, first mortgagee; (2) the plaintiff, second mortgagee; and (3) Winslow, the owner.

■ If Winslow, the insured owner of the property, had also been mortgagor of the two mortgages for whose protection mortgagee clauses were attached to the policies and had remained owner of the property at the time of the fire, there would not be a case. The insurance companies would have paid, or been compelled to pay, in the order named. But as Winslow, the owner, had ceased to be owner at the time of the fire and as one of the mortgages protected by the policies was given by the plaintiff and the other mortgage was given to the plaintiff, who was owner both prior to and succeeding the owner originally insured, there arose confusion which can be dispelled only by finding out the engagements of the parties in the policies of insurance.

The parts of the standard mortgagee clause appended to each policy and relating to the Trust Company so far as they are pertinent to the present phase of the controversy read as follows:

"Loss, or damage, if any, under this policy shall be payable to Security Trust & Safe Deposit Company as first mortgagee, * * * as interest may appear, and this insurance, as to the interest of the mortgagee, * * * only therein, shall not be invalidated * * * by any foreclosure * * * nor by any change in the title or ownership of the property. * * *

"Whenever this company shall pay the mortgagee * * * any sum for loss or damage under this policy and shall claim that, as to the * * * owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee * * * the whole principal due * * * on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities, but no subrogation shall impair the right of the mortgagee * * * to recover the full amount of its claim."

The standard mortgagee clause appended to each policy relating to the plaintiff is the same except with respect to its name and to the reference to the plaintiff as "second mortgagee."

Taking up the three separate contracts of the two policies in their order, it is certain that the contracts with Winslow, the owner, fell out of the policies when his title to the property passed from him on foreclosure of the second mortgage and sale thereunder. As to him the policies became void. The contracts with the Trust Company under the standard first mortgagee clauses however remained unaffected by change of title and disappearance of the insured owner. The contracts with the plaintiff under the standard second mortgagee clauses, according to the state court's decision, remained in legal effect as before. The theory of this decision was that the plaintiff's transposition from mortgagee to owner was not "such a change of ownership" as will invalidate the standard mortgagee clauses and as will disturb the mortgagee's insurable interest. Accordingly it held that as no new parties and no new risks were injected into the situation, the interest of the plaintiff was "essentially the same" before and after the change of ownership. As it was dealing, on demurrer, solely with the right of one of the insured parties to maintain its actions against the insurance companies, the state court had no occasion to decide nor did it express any opinion on the right of the insurance companies, subrogees of the first mortgagee, to refuse payment to the second mortgagee under the question which has arisen in this case.

With Winslow, the owner, out of the way, the insurance companies had certain rights with respect to their liability to pay the mortgagees for loss by fire. Those rights were given them by the quoted paragraphs of the first and second mortgagee clauses to which the Trust Company and the plaintiff, by accepting the policies, agreed. They were distinctly a part of the contracts binding alike on all parties. They arose from provisions in the mortgagee clauses which fit precisely the situation which arose after Winslow ceased to be the owner. Ordinarily, such rights, when created by contract, move to an insurance company and are intended to enable it, when no longer liable to the owner, to recover from him the amount of his debt which it had paid his obligee, usually a first mortgagee. So, to accomplish this result, which was perfectly legal if agreed to, the parties, raising a conventional subrogation, the pivot on which the whole case turns, agreed in the standard first mortgagee clauses in the manner we have just quoted. Reading their provisions on the undisputed facts, it will be seen that the insurance companies did pay the Trust Company for the loss it had suffered; that they did claim that no liability as to the non-existent owner remained and that when they paid the Trust Company its first mortgage, which as it happened was the mortgage executed by the plaintiff, they in fact paid the plaintiff's debt to the Trust Company and that when they thus paid its debt, the insurance companies were, as the plaintiff had agreed, entitled by subrogation to the instruments representing the debt, which in this case was the plaintiff's bond to the Trust Company, and that the bond with the accompanying mortgage were assigned to the insurance companies whereby the right of the Trust Company, the first mortgagee and subrogor, to the full amount of its claim, could not, in view of the fact that its claim had been paid in full, be impaired.

Thus it is plain that the facts come within the terms of the contracts as they affect the right of the insurance companies to be subrogated to the securities held by the Trust Company on payment of the debt of the obligor, who in this case was the plaintiff, and as they affect their rights to proceed on the securities so acquired. If hardship follows, it is of the plaintiff's own making either in subscribing to the contracts as originally drawn or failing to obtain a change in their terms or to get new ones after the situation in respect to insurable parties and insurable interests had changed.

Counsel have not found any decided cases which exactly rule, or closely approach, the question in this case. Authorities which, it is claimed, throw light upon the question have been cited; yet, on examination, we find that, because of differences in the facts, they throw shadows upon the question. Nor has the argument by supposititious cases deflected us from holding firmly to the contracts which the parties wrote. We decline to re-write them.

Having paid the plaintiff's debt to the Trust Company and by subrogation having lawfully come into possession and ownership of the plaintiff's bond which evidenced

the debt, and having reduced the bond to a judgment which cannot be successfully assailed collaterally, we can not see by what principle of equity the insurance companies should be restrained of their legal rights of execution.

The decree of the District Court dismissing the bill is affirmed.

BUFFINGTON, Circuit Judge, dissented.